TRINA A. HIGGINS, United States Attorney (#7349)
JENNIFER K. MUYSKENS, Assistant United States Attorney (DC #475353)
LUISA GOUGH, Assistant United States Attorney (#17221)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801)524-5682
Email: jennifer.muyskens@usdoj.gov
_____

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MASON WARR,<br><br>Defendant. | UNITED STATES' RESPONSE TO DEFENDANT MASON WARR'S MOTION FOR *JAMES* HEARING AND MEMORANDUM IN SUPPORT<br><br>Case No. 2:23-cr-00039-HCN<br><br>Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Jared C. Bennett |

The United States of America, through the undersigned Assistant United States Attorney, respectfully submits this response to Defendant Mason Warr's Motion for *James* Hearing and Memorandum in Support (Motion).[1] The Court should decline Mr. Warr's request to conduct a pretrial *James* hearing. There is no need for a pretrial determination on the admissibility of the contested statements under *United States v.*

---

[1] Motion, *USA v. Bassett et al.*, 2:23-cr-00039-HCN-JCB (D. Utah Mar. 15, 2024), ECF 50.

*James,* 590 F.2d 575 (5th Cir. 1979) and Federal Rule of Evidence 801(d)(2)(E) because the statements are otherwise admissible at a joint trial of Mr. Warr and Mr. Bassett as statements of a party-opponent, statements of party employees, and non-testimonial statements.

## RELEVANT FACTS

In February 2023, a federal grand jury charged Mr. Warr and others in a 25-count Indictment, alleging violations of 18 U.S.C. § 371 (Conspiracy to Defraud the United States), 18 U.S.C. § 1343 (Wire Fraud), and 26 U.S.C. § 7206(2) (Aiding and Assisting in Filing False Tax Returns).[2] The Indictment—a 16-page speaking indictment—describes in detail a large scheme and artifice to defraud perpetuated by Mr. Warr and his co-defendant through their business, COS ACCOUNTING & TAX LLC (COS Accounting).[3] Mr. Warr was the CEO and co-founder of COS Accounting; co-defendant, Zachary Bassett, was the CFO and co-founder of COS Accounting.[4]

With the help of his co-defendant and COS Accounting employees, Mr. Warr solicited single-member LLCs and created LLCs with independent contractors in order to apply for certain COVID-related tax credits.[5] Mr. Warr, along with his co-defendant and COS Accounting employees, submitted claims for COVID-related tax credits on behalf

---

[2] Indictment, 2:23-cr-00039-HCN-JCB (D. Utah Feb. 1, 2023), ECF 1.
[3] *See generally id.*
[4] *Id.,* ¶¶ 1–2.
[5] *See id.* ¶¶ 22–23.

2

of LLCs regardless of statutory eligibility.[6] These claims were false or fraudulent.[7]

In conjunction with these claims, Mr. Warr, his co-defendant, and COS Accounting employees, filed IRS tax forms claiming maximum wage amounts regardless whether such wages were paid out, adding an additional layer of fraud to the claims.[8] Mr. Warr, his co-defendant, and COS Accounting employees routinely listed spouses of single-member LLCs as employees on IRS forms to increase COVID-related tax credit payouts, regardless of whether the spouse was an actual employee of the LLC; again, increasing the level of deception and fraud.[9] Next, Mr. Warr, his co-defendant, and COS Accounting employees would claim sick and/or family leave wages for the LLCs regardless whether the LLCs actually paid sick and/or family leave wages or whether the LLCs had legitimate employees that qualified for sick and/or family leave wages.[10] Once again, these falsehoods resulted in fraudulent claims for COVID-related tax credits.[11]

Finally, Mr. Warr, his co-defendant, and COS Accounting employees would sign clients' names and submit IRS forms to obtain the COVID-related tax credits, all without the prior knowledge or authorization of the clients.[12] The whole objective of the scheme was for Mr. Warr, his co-defendant, and their company COS Accounting, to obtain

---

[6] *Id.* ¶ 24.
[7] *Id.*
[8] *Id.* ¶ 25.
[9] *Id.* ¶ 26.
[10] *Id.* ¶¶ 27–28.
[11] *Id.*
[12] *Id.* ¶ 31.

money, tax credits, and other tax benefits from the United States through fraud.[13]

All the above facts are laid out in the Indictment, with charts to identify the overt acts.[14] The charts identify certain LLCs, the fraudulent forms submitted on their behalf, the dates of submission, the specific falsehoods in the forms, and the COVID-related tax credits obtained from the fraudulent submissions.[15]

In addition to the facts laid out in the Indictment, the United States has provided significant discovery detailing the above. Approximately 150,000 documents have been produced, including tax forms and interviews with employees and customers, all chronicling Mr. Warr's illegal acts.[16] And more than 3,000 recorded conversations with COS Accounting employees and customers have been produced.[17] A large number of these recordings document the employees' conversations with customers about the scheme, to include what questions were asked of customers and what information was obtained (or not obtained) before the fraudulent claims were filed by COS Accounting. Also produced were recorded conversations between employees and Mr. Warr and/or Mr. Bassett discussing the scheme. Finally, the United States produced recorded conversations between an undercover agent and Mr. Warr, Mr. Bassett, and a COS Accounting employee.

---

[13] *Id.* ¶ 38.
[14] *Id.* ¶¶ 34, 40, 42.
[15] *Id.*.
[16] *See* Certificates of Compliance, 2:23-cr-00039-HCN-JCB (D. Utah Feb. 28, 2023; Mar. 9, 2023; Mar. 31, 2023; Aug. 18, 2023), ECF 25, 33, 36, 43.
[17] *See id.*

At trial, the United States anticipates calling multiple individuals that will, as part of their testimony, lay the foundation that the witness was an employee of COS Accounting, that the witness's involvement in the scheme was in his/her capacity as an employee of COS Accounting, and that the witness acted at the direction and instruction of COS Accounting and Mr. Warr and Mr. Bassett.

## **PROCEDURAL HISTORY**

Due in part to the voluminous discovery, the parties continued the trial date four times to allow defense counsel additional time to review discovery and prepare for trial.[18] Trial is now set for September 10, 2024.[19]

On March 15, 2024, Mr. Warr filed the present Motion. Mr. Warr requests a hearing to determine the admissibility of coconspirator statements under Rule 801(d)(2)(E), as described in *James.*[20] In the Motion, Mr. Warr discusses the recorded conversations and identifies them as "thousands of recorded conversations involving the defendants and/or other employees of COS Accounting."[21] Mr. Warr also refers to "dozens of reports of witnesses (most of whom are former employees or customers of COS), often describing statements made by Mr. Bassett and other employees of COS Accounting."[22] Mr. Warr asserts that, "[a]bsent predicate findings by the Court"

---

[18] *See* Orders to Continue, 2:23-cr-00039-HCN-JCB (D. Utah May 5, 2023; Aug. 10, 2023; Dec. 7, 2023; Mar. 15, 2024), ECF 39, 42, 45, 49.
[19] Minute Entry, 2:23-cr-00039-HCN-JCB (D. Utah Marc. 12, 2024), ECF 48.
[20] *See generally* Motion.
[21] Motion at 4; *see also* Motion at 2 ("The recorded conversations include several recordings with Mr. Warr but largely involve other employees of COS Accounting . . .").
[22] Motion at 4; *see also* Motion at 2 ("The documents provided also include dozens of reports of interviews with

concerning a conspiracy, "any such statements (made by anyone other than Mr. Warr) are inadmissible hearsay."[23] Other than the broad categories of statements and the above-stated general concerns, Mr. Warr does not identify any particular statement or specific concern about any statement in making his motion. As will be shown, no pretrial *James* hearing is necessary in this case.

## LEGAL BACKGROUND

Hearsay is an out of court statement offered to prove the truth of the matter asserted.[24] Although hearsay is not typically admissible at trial, the Federal Rules of Evidence provide several exclusions and exceptions from this general ban.[25] Nonhearsay statements are proper, and include: [1] statements offered against an opposing party which were "made by the party in an individual or representative capacity," (Rule 801(d)(2)(A)); [2] statements "made by the party's agent or employee on a matter within the scope of that relationship and while it existed," (Rule 801(d)(2)(D)); and [3] statements "made by the party's coconspirator during and in furtherance of the conspiracy," (Rule 801(d)(2)(E)).[26] Importantly, to qualify as hearsay, a statement must be offered "to prove the truth of the matter asserted in the statement."[27] If a statement "is

---

former employees and customers of COS, many of which describe statements made by Mr. Warr, Mr. Bassett, and other employees of COS.").
[23] Motion at 4.
[24] Fed. R. Evid. 801(c).
[25] *See id.* R. 802 ("Hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court."); *see also id.* R. 801 (outlining exclusions from hearsay); *id.* R. 803, 804, 807 (describing a number of exceptions to the rule against hearsay).
[26] Fed. R. Evid. 801(d)(2)(A), (D), (E).
[27] *Id.* R. 801(c)(2).

not offered for its truth, the statement is not considered 'hearsay.'"[28]

To admit a coconspirator's out-of-court statements under Rule 801(d)(2)(E), a "court must determine by a preponderance of the evidence that: (1) a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy."[29] In the Tenth Circuit, it is preferrable for the court to utilize a *James* hearing to satisfy the prerequisites for admission of a coconspirator statement.[30] But, a pretrial statement-by-statement determination is not the purpose of the *James* hearing. As the Tenth Circuit explained, "[t]he strongly preferred order of proof in determining the admissibility of an alleged coconspirator statement is first to hold a '*James* hearing,' . . . outside the presence of the jury <u>to determine by a preponderance of the evidence the existence of a predicate conspiracy</u>."[31] The Fifth Circuit's holding in *James* likewise does not suggest a pretrial statement by statement analysis: "[t]he district court should, whenever reasonably practicable, require the showing of a conspiracy and of the connection of the defendant with [the conspiracy] before admitting declarations of a coconspirator."[32] Further, there is no need for a court to evaluate a potential *James* issue if the statements at issue fall within the parameters of other hearsay exceptions and exclusions.[33]

---

[28] *United States v. Brinson*, 772 F.3d 1314, 1322 (10th Cir. 2014).
[29] *United States v. Alcorta*, 853 F.3d 1123, 1137 (10th Cir. 2017).
[30] *Id.* at 1138 (citing 590 F.2d 575).
[31] *United States v. Urena*, 27 F.3d 1487, 1491 (1994) (internal citations omitted) (emphasis added).
[32] *James,* 590 F.2d at 582.
[33] *See United States v. Gonzalez-Montoya*, 161 F.3d 643, 648 (10th Cir. 1998).

If the court decides a *James* hearing is appropriate to determine admissibility of coconspirator statements, it has discretion regarding the manner and timing for such determination.[34]. Even when choosing to make a pre-trial determination regarding the admissibility of coconspirator statements, an evidentiary hearing is not required.[35] Whether to take oral testimony or to proceed on a written proffer falls within the discretion of the district court, based on the particular circumstances of the case.[36] Courts in the District of Utah routinely rely on an evidentiary proffer as the first, and sometimes final, step in making a preliminary pre-trial determination for coconspirator statement admissibility.

## ANALYSIS

Mr. Warr asserts a *James* hearing is necessary to determine the admissibility of alleged coconspirator statements, and identifies three potential categories of statements qualifying as coconspirator hearsay: (1) recorded statements from "conversations involving the defendants," (2) recorded statements from conversations involving the defendants and "other employees of COS Accounting," and (3) witness testimony "describing statements made by Mr. Bassett and other employees of COS Accounting."[37] Mr. Warr's motion appears to assume that because there is a charged conspiracy, the only basis for admission of statements must be as a statement of coconspirator. This

---

[34] *United States v. Owens*, 70 F.3d 1118, 1125 (10th Cir. 1995) ("[W]e will continue to entrust the [procedure] to the discretion of the district court to be decided in light of the particular circumstances of each case.").
[35] *Id*. at 1123–1125.
[36] *Id*.
[37] Motion at 4.

assumption is erroneous. As demonstrated below, each category of statements identified by Mr. Warr is, in fact, not hearsay and is admissible at trial as something other than a coconspirator statement. As such, there is no need for a pretrial determination under *James*. To the extent the Court believes a *James* hearing is appropriate, the facts of this case support the use of a written proffer for purposes of finding the existence of the conspiracy and Mr. Warr's participation in it.

1. *Recorded Statements from Conversations Involving the Defendants*

Under Rule 801(d)(2)(A), "[a] statement is not considered 'hearsay' if it is offered against a party and is the party's own statement."[38] In *United States v. Mayes*, the Tenth Circuit considered the admissibility of two defendants' statements offered through tape recorded telephone conversations.[39] The court had no trouble concluding the defendants' statements were "admissions under Fed. R. Evid. 801(d)(2)(A), and [] not hearsay."[40] Thus, any statements made by Mr. Warr or Mr. Bassett in a recorded conversation are not hearsay under Rule 801(d)(2)(A), and a *James* hearing is not required to admit the party-opponent statement against the party that made the statement.[41]

To be clear, a statement made in a recorded conversation by Mr. Bassett that is plainly admissible as a statement of a party-opponent against Mr. Bassett at the joint trial of Mr. Warr and Mr. Bassett does not end the analysis of whether the statement may

---

[38] *Brinson*, 772 F.3d at 1320.
[39] 917 F.2d 457, 463 (10th Cir. 1990).
[40] *Id.* (internal footnote omitted).
[41] *See Gonzalez-Montoya*, 161 F.3d at 648 (concluding that statements of a party defendant fell "squarely within the parameters of Fed. R. Evid. 801(d)(2)(A)" and thus the court "need not reach the *James* issue with regard to them").

admissible (and considered by the jury) as evidence against Mr. Warr. But, a pretrial *James* hearing is not necessary because the only question for the Court is not whether to admit Mr. Bassett's statement at trial, but rather, whether the jury will be instructed that the statement can be considered by the jury in its determination of Mr. Warr's guilt. As the Tenth Circuit noted in *Urena,* "[t]he reason for this preference [of a *James* hearing] is that if the court provisionally admits a statement with the idea that the statement and other evidence will later 'connect up' showing the existence of a predicate conspiracy, there is the risk of undue prejudice if in the end the evidence does not in fact 'connect up.'"[42] In essence, the Tenth Circuit's concern is that we may not be able to "unring the bell" if the jury hears the statement and the trial court later determines that the requisite foundation was not met to admit the statement at trial.

No such concern exists in this case. Mr. Bassett's statements are admissible against him at the joint trial as statements of a party-opponent. The jury will hear the statements regardless of whether the Court determines that they are coconspirator statements. If, during the trial, the United States does not establish the requirements to admit Mr. Bassett's statements as coconspirator statements against Mr. Warr, then, at the conclusion of the evidence, the jury will be instructed that they may not consider Mr. Bassett's statements in deciding Mr. Warr's guilt. If, during trial, the United States establishes the requirements to admit Mr. Bassett's statements as coconspirator

---

[42] *Urena,* 27 F.3d at 1491.

10

statements against Mr. Warr, then the jury will be instructed that they may consider those statements as substantive evidence against Mr. Warr. There is no need to have a pretrial *James* hearing to determine whether these statements constitute coconspirator statements because that is a determination the Court can make during this trial.

2. *Recorded Statements from Conversations Involving the Defendants and COS Accounting Employees*

Rule 801(d)(2)(D) explains that out-of-court statements are not hearsay when offered against an opposing party and which are made by the party's "agent or employee on a matter within the scope of that relationship and while it existed." This Rule "does not require that the principal authorize the specific statement made by the agent."[43] Rather, statements are within the scope of an employment relationship "when the declarant makes the statement while performing his or her agency duties, even if the declarant may have lacked authorization to make the specific statement at issue, so long as the statement 'relates to' those duties."[44]

Mr. Warr is the co-founder and Chief Executive Officer of COS Accounting.[45] COS Accounting employees are, consequently, Mr. Warr's employees. Mr. Warr does not contend in his Motion that the employee conversations happened outside the scope of their employment or after they were no longer employed with COS Accounting. Indeed, Mr. Warr could not make such a claim. The scheme to defraud that is charged in the

---

[43] *Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1213 (10th Cir. 2022).
[44] *Id.* (quotation simplified).
[45] Indictment ¶ 2.

Indictment was the business "product" that Mr. Warr and Mr. Bassett developed for COS Accounting and instructed employees of COS Accounting to sell to clients. The recorded conversations with COS Accounting employees discussing the scheme with clients are nonhearsay because they fall squarely within the parameters of Rule 801(d)(2)(D). As such, there is no need for a *James* hearing for this category of statements.

3. *Witness Testimony Describing Statements Made by Mr. Bassett and COS Accounting Employees*

Finally, any witness testimony regarding statements made by Mr. Bassett and COS Accounting employees is admissible as nonhearsay for three distinct reasons. First, all of these statements are not offered for their truth. Any statements witnesses offer concerning tax advice obtained from Mr. Bassett and COS Accounting employees are not for the purpose of evaluating or asserting the truthfulness of the advice; they are merely offered to identify what was said. And it is clear that a challenged out-of-court statement only becomes problematic hearsay if offered for the truth of the matter asserted in the statement.[46]

What's more, witness testimony about statements made by Mr. Bassett or COS Accounting employees qualifies as nonhearsay under Rule 801(d)(2)(A) and (D), as explained above. The statements Mr. Bassett made to witnesses qualify as nonhearsay party admissions, and the same arguments made with respect to Mr. Bassett's recorded

---

[46] *See* Fed. R. Evid. 801(c).

conversations apply to this witness testimony.[47] And, statements made by COS Accounting employees to the witnesses are properly nonhearsay because these are statements made by Mr. Warr's employees, the content is within the scope and timeframe of employment, and the statements are offered by the United States against Mr. Warr.[48] Because the witness testimony regarding statements by Mr. Bassett and COS Accounting employees are nonhearsay and admissible independent of a finding that it is a coconspirator statement, a pretrial *James* hearing is not required.

   4. *Proposed Procedure for Determining Admissibility of Coconspirator Statements*

This Court has considerable discretion to determine the appropriate procedure for addressing the admissibility of coconspirator statements. The "particular circumstances" of this case should guide the Court.[49] Here, all the statements identified by Mr. Warr in his motion are admissible at the joint trial of Mr. Warr and Mr. Bassett as something other than a coconspirator statement. The only identified category of statements that may necessitate a coconspirator determination of admissibility are statements made by Mr. Bassett, which are already admissible at trial against Mr. Bassett. At the conclusion of the government's case, the Court will be in an excellent position to determine if any of Mr. Bassett's statements should be admitted against Mr. Warr under Rule 801(d)(2)(E), and the Court can properly instruct the jury about whether it may consider Mr. Bassett's

---

[47] *See id.* R. 801(d)(2)(A).
[48] *Id.* R. 801(d)(2)(D).
[49] *See Owens*, 70 F.3d at 1125 ("[W]e will continue to entrust the [procedure] to the discretion of the district court to be decided in light of the particular circumstances of each case.").

statements in deciding Mr. Warr's guilt as part of its charging instructions. The "particular circumstances" of this case do not warrant a pretrial *James* hearing.

To the extent that the Court believes some pretrial determination is necessary, the United States respectfully submits that the facts of this case support proceeding by written proffer. First, it is important to note that a *James* hearing is about the first two prongs of the Rule 801(d)(2)(E) analysis, not the third statement-specific prong. Namely, a *James* hearing determines the existence of the conspiracy and the defendant's participation in it.[50] It is not, as Mr. Warr's motion suggests, a pretrial hearing on each statement that may be introduced at trial. Indeed, as it relates to live witness testimony, it is impossible to predict the words a witness may use and inappropriate for either counsel to script how a witness should answer questions.

As it relates to the existence of the conspiracy and the defendant's participation in it, the facts of this case support proceeding by way of written proffer. The speaking Indictment is sixteen (16) pages. It describes, in detail, the charged conspiracy. It identifies, with particularity, the overt acts of the conspiracy. In this case, Mr. Warr's business entity is also charged because the scheme to defraud was carried out through that entity. The charged scheme was done through the business entity as a business "product" that was sold to clients. This is simply not a case where tangentially connected

---

[50] *United States v. Urena,* 27 F.3d at 1491. *See also James,* 590 F.2d at 582 (noting that the preferred order is for the district court to determine first the existence of the conspiracy and the defendant's participation in the conspiracy before admitting specific statements).

individuals, operating in different spheres and for different purposes, are accused of a conspiracy. Further, Mr. Warr's Motion acknowledges the existence of extensive recorded conversations, some of which involve Mr. Warr, and all of which involve the defendants and/or employees of COS Accounting. Mr. Warr is on a recorded conversation with an undercover agent discussing the scheme. Mr. Warr's Motion acknowledges dozens of reports of witness interviews.

On the facts of this particular case, a written proffer regarding the existence of the conspiracy and Mr. Warr's participation in it is more than sufficient to satisfy a pretrial *James* analysis, should the Court determine that is necessary.

## **CONCLUSION**

The United States respectfully submits that Mr. Warr's Motion for *James* Hearing and Memorandum in Support should be denied. As explained above, all identified out-of-court statements qualify as nonhearsay under different portions of the Federal Rules of Evidence and are therefore already admissible at trial. To the extent that any statements of Mr. Bassett may be admissible against Mr. Warr at their joint trial as coconspirator statements, the Court can make this determination during trial without concern that there will be undue prejudice to Mr. Warr. The Court has no need to reach the *James* issue at this time and should decline the Motion. If the Court determines that a pretrial *James* analysis is needed, the Court should proceed by written proffer regarding the existence of the conspiracy and Mr. Warr's participation in the conspiracy.

DATED this 29th day of March, 2024.

                                             TRINA A. HIGGINS
                                             United States Attorney

                                             */s/ Jennifer K. Muyskens*
                                             Jennifer K. Muyskens
                                             Assistant United States Attorney