Aaron B. Clark (15404)
Trinity Jordan (15875)
**ARMSTRONG TEASDALE LLP**
222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
Telephone: (801) 401-1600
Email: aclark@atllp.com
       tjordan@atllp.com

*Attorneys for Defendant Mason Warr*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MASON WARR, et al.<br><br>Defendant. | **REPLY IN SUPPORT OF DEFENDANT MASON WARR'S MOTION FOR *JAMES* HEARING AND MEMORANDUM IN SUPPORT**<br><br>Case No. 2:23-CR-00039 HCN<br><br>Honorable Howard C. Nielson, Jr. |

The government opposes a *James* hearing in this case, apparently regarding the Tenth Circuit's "strong preference" as a last resort. Instead, the government asserts that any pre-trial determination on admissibility of co-conspirator statements is unnecessary, as it claims the universe of potential co-conspirator statements are admissible under alternative theories.[1] And

---

1   In several instances, the government appears to limit its analysis to categories of statements Mr. Warr identified – "Other than the broad categories of statements and the above-stated general concerns, Mr. Warr does not identify any particular statement or specific concern about any statement in making his motion." Response at 6. In this statement and several others in its

even if such a determination is necessary, the government asks to simply proceed by written proffer, asserting that it need not (and, in certain respects, claims it cannot) demonstrate that any co-conspirator statements it seeks to introduce are "in the course of and in furtherance of the conspiracy." But if the government intends to introduce any out of court statements pursuant to Rule 801(d)(2)(E), none of these arguments and requests are availing or sufficient. As such, short of a government stipulation that it will not seek to admit *any* co-conspirator statements under Rule 801(d)(2)(E), the Court should follow the Tenth Circuit's repeated guidance and hold a pre-trial *James* hearing. That hearing should necessarily include an evaluation of the statements the government seeks to offer at trial.

**Prior Statements of Defendants**

The government asserts that prior statements from charged defendants Mr. Warr and Mr. Bassett[2] do not require a *James* hearing because these statements are alternatively admissible against the respective defendants under Rule 801(d)(2)(A) – statements of a party opponent.[3] As such, the government argues, these statements will be presented to the jury irrespective of whether the Court makes the predicate findings for co-conspirator statements. The government then offers that, if it is unable to provide sufficient proof at trial to qualify these statements under Rule

---

Response, the government intimates that the defense bears some burden in *keeping out* statements the government may intend to offer into evidence at trial, rather than the government bearing the burden to properly seek their admission. It perhaps should be noted here that the present motion is *not* a motion to suppress, but a motion to put the government to its burden, outside the presence of a jury, to make the necessary predicate showing for *any* statements it seeks to admit at trial pursuant to Fed. R. Ev. 801(d)(2)(E) – whether or not they fall within the broad categories Mr. Warr identified in his Motion.

2   The government fails to include COS Accounting here among the charged defendants.
3   Response at 9.

2

801(d)(2)(E), the Court can simply instruct the jury after the close of evidence to disregard a co-defendant's statements against anyone other than the respective defendants themselves.[4]

This suggested solution is *exactly* the type of problematic scenario a pre-trial *James* hearing is meant to avoid: the jury hearing statements that the Court must later instruct it to disregard as to certain defendants.[5] In the context of a trial that may last a few weeks, the prospect of a curative instruction not provided until the close of the evidence is little comfort to Mr. Warr, especially since the "undue prejudice" in this scenario is entirely avoidable with a *James* hearing and exactly the reason the Tenth Circuit urges a *James* hearing in the first place.

Furthermore, if Mr. Bassett's statements are not admissible as co-conspirator statements against Mr. Warr, Mr. Warr will need to strongly consider a motion to sever under Fed. R. Crim. Pro. 14. It is therefore particularly important for the Court to hold a pre-trial *James* hearing to determine the admissibility of any alleged coconspirator statements against Mr. Warr.

**Statements of COS Employees**

The government next asserts that the Court need not consider Rule 801(d)(2)(E) as to out of court statements of COS Accounting employees, arguing they are alternatively admissible against Mr. Warr as statements of employees under Rule 801(d)(2)(D).

Mr. Warr neither concedes nor agrees with the government's cursory analysis here that COS Accounting employees were "his" employees for purposes of Rule 801(d)(2)(D). COS

---

4    Response at 10-11.
5    "The reason for this preference [for a pre-trial *James* hearing] is that if the court provisionally admits a statement with the idea that the statement and other evidence will later 'connect up' showing the existence of a predicate conspiracy, there is the risk of undue prejudice if in the end the evidence does not in fact 'connect up.'" *United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1994).

Accounting is a distinct entity – and a separately charged defendant – from Mr. Warr. And other than pointing to allegations in the Indictment, the government has made no showing that Mr. Warr helped found COS Accounting, nor what his title and role in the company were. Even if it had, the government offers no legal analysis that such facts would sufficiently demonstrate COS Accounting's employees were Mr. Warr's.[6] Moreover, admission of statements under Rule 801(d)(2)(D) requires more rigorous examination (including of the statements themselves) and its own offering of proof, which the government does not provide here.[7] As such, the government has not demonstrated that any out of court statements of COS Accounting employees are admissible against Mr. Warr under Rule 801(d)(2)(D). If, then, the government seeks to admit any of these same statements as alleged co-conspirator statements under Rule 801(d)(2)(E), the Court should require that it do so during a pre-trial *James* hearing.

### Other Statements Not Offered For The Truth

As for any witness testimony regarding coconspirator statements, the government blanketly asserts that these will be admissible non-hearsay, since these statements will not be

---

6   *See, e.g., Sipma v. Mass. Cas. Ins. Co.*, 256 F.3d 1006, 1010 (10th Cir. 2001) (applying Colorado common law) ("Because a corporation enters into contracts in a capacity separate and distinct from its shareholders, the corporation, not the shareholder, is the employing party in an employment relationship.")

7   *See, e.g., Yontz v. AMF Sci. Drilling Int'l Inc.*, 962 F.2d 18 (Table) at *4, 1992 WL 98000 (10th Cir. 1992) ("This court has outlined a three-part test in order for a statement to be admissible under 801(d)(2)(D): (1) the party must establish the existence of the employment relationship independent of the declarant's statement offered as evidence; 2) the statement must be made during the existence of the declarant's agency or employment; and 3) the statement must concern a matter within the scope of declarant's employment.") (citing *Boren v. Sable*, 887 F.2d 1032 (10th Cir. 1989)).

offered for the truth. It then indicates that the universe of these statements can be circumscribed to "tax advice obtained from Mr. Bassett and COS Accounting employees."[8]

The government is, of course, correct that statements not offered for the truth are not hearsay.[9] It remains unclear, however, that all out of court statements regarding "tax advice" from alleged coconspirators will necessarily fall within that exception. To the extent the government elects not to present alleged out of court coconspirator statements at a *James* hearing that it later seeks to offer for the truth (and admit under Rule 801(d)(2)(E)), the Court should exclude them.

**Procedure**

Finally, the government urges that, if the Court elects to make a pre-trial determination on the admissibility of co-conspirator statements at trial, the "particular circumstances" in this case warrant proceeding by written proffer in lieu of a hearing.[10] According to the government, these "particular circumstances" include (1) a sixteen page "speaking" Indictment,[11] (2) "the existence of extensive recorded conversations,"[12] and (3) "dozens of reports of witness interviews."[13] It is not clear why the government believes these factors obviate the need for a hearing, rather than illustrate the need for one. Furthermore, the Tenth Circuit has cautioned district courts about the use of written proffers in these situations:

---

8  Response at 12.
9  Fed. R. Ev. 801(c).
10  Response at 14.
11  Response at 14. The government seems to conflate the sixteen pages of allegations in the Indictment as a form of written proffer, at one point even referring to the allegations as "facts laid out in the Indictment." Response at 4. But the allegations in the Indictment are merely allegations, and the purpose of a *James* hearing and pre-trial submission of proof is to move beyond allegations to an offering of admissible evidence.
12  Response at 15.
13  Response at 15.

> [In *United States v. Roberts*][14] [w]e made it clear we were 'reluctant to approve or condone' the district court's reliance on the government's written proffer because this summary procedure undermined the district court's ability to evaluate the telephone conversations in context or even identify the speakers and because the written proffer did not adequately specify the particular coconspirator statements the government planned to introduce at trial.[15]

The same issues the Tenth Circuit identified in *Roberts* are present here in the government's proposed plan: the speaking indictment, recorded conversations, and reports of witness interviews all do not allow the Court to sufficiently evaluate the context of any alleged co-conspirator statements the government intends to introduce.[16]

Additionally, while the government acknowledges that Rule 801(d)(2)(E) requires the Court to make predicate findings that "(1) a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy,"[17] the government curiously argues a *James* hearing is *not* meant to evaluate the actual statements it seeks to admit.[18] But as set forth in the quotation above, the

---

14  14 F.3d 502, 513-14 (10th Cir. 1993).
15  *United States v. Owens*, 70 F.3d 1118, 1125 (10th Cir. 1995).
16  The government's Response also indicates any written proffer would, on a more basic level, likely also fail to "specify the particular coconspirator statements [it] plan[s] to introduce at trial." *Owens*, 70 F.3d at 1125.
17  Response at 7, quoting *United States v Alcorta*, 853 F.3d 1123, 1137 (10th Cir. 2017).
18  To justify avoiding pre-trial evaluation of the statements themselves, the government claims it is "impossible to predict" the statements it may elicit from witnesses, and that it would be inappropriate to "script" their testimony. Response at 14. First, this ignores that many (if not most) of the statements the government will likely seek to introduce may be found among the "thousands" of recordings in discovery. Second, as the requirement relates to live witness testimony and a witness's recollection of alleged co-conspirator statements, the government's inability to predict the precise wording of a witness's answers hardly makes its task "impossible." The government has presumably already interviewed its witnesses (often more than once) and generated "dozens" of reports of these interviews – reports that provide the parties at least a general understanding of what the witness has said, and ostensibly what the witness is likely to say in the future. With these prior interviews as a guide, the government should be able to provide the Court

government's failure to "adequately specify the particular coconspirator statements the government planned to introduce at trial" was one of the Tenth Circuit's primary complaints in *Roberts* about the use of written proffers in lieu of a *James* hearing.[19] And more recently in *United States v. Stein*, the Tenth Circuit was even more explicit about its expectation that a *James* hearing include evaluation of the actual statements and whether they were "in the course of and in furtherance of the conspiracy":

> Before statements may be admitted under [Fed. R. Ev. 801(d)(2)(E)], the district court must determine that (1) by a preponderance of the evidence, a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy. *The preferred procedure of this circuit is to hold a James hearing outside the jury's presence to make preliminary findings as to whether these requirements are satisfied….*[20]

Further, while the government offers no examples of a *James* hearing that does not include evaluation of the statements themselves, caselaw within the Tenth Circuit is replete with the opposite.[21]

---

at least a general understanding of the substance of the alleged co-conspirator statements likely to be introduced through its live witnesses. Indeed, the government notes within this same Response that it expects these statements will only concern "tax advice obtained from Mr. Bassett and COS Accounting employees." Response at 12. Finally, it seems worth noting that the government has been able to sufficiently describe anticipated testimony at these pre-trial hearings before. *See, e.g., United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (noting that the district court conducted a pre-trial *James* hearing and determined, among other things, that "the anticipated testimony of [] coconspirators at Appellant's trial concerned statements made in furtherance of the conspiracy.").

19   *Owens*, 70 F.3d at 1125.
20   *United States v. Stein*, 985 F.3d 1254, 1268–69 (10th Cir. 2021) (internal quotations and citations omitted) (emphasis added).
21   *See e.g., United States v. Alcorta*, 853 F.3d 1123, 1138-1139 (10th Cir. 2017) (district court conducted two "lengthy" *James* hearings; during the second hearing "the court questioned how specific conversations fit within the coconspirator exception," provisionally admitted "most of the calls offered under the coconspirator exception," excluded four calls, and reserved decision on two

If the government intends to offer any out of court statements at trial under Rule 801(d)(2)(E), the Court should follow the Tenth Circuit's "strong preference" and hold a pre-trial *James* hearing. Aside from requiring the government to provide evidence of the alleged conspiracy and Mr. Warr's participation in it, the hearing should necessarily include evaluation of the statements themselves and whether (1) the declarant was also a member of the alleged conspiracy, and (2) whether the statements the government seeks to admit were made "in the course of and in furtherance of the conspiracy."

DATED this 11th day of April, 2024.

**ARMSTRONG TEASDALE LLP**

 /s/ *Aaron B. Clark*
Aaron B. Clark
Trinity Jordan
*Attorneys for Defendant Mason Warr*

---

calls pending additional briefing); *Stein*, 985 F.3d at 1269 ("proffered statements themselves" admitted at multi-day pre-trial *James* hearing); *Townley*, 472 F.3d at 1273 (noting that the district court conducted a pre-trial *James* hearing and determined, among other things, that "the anticipated testimony of [] coconspirators at Appellant's trial concerned statements made in furtherance of the conspiracy."); *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242-43 (10th Cir. 1996) (in pre-trial *James* hearing, the district court considered "tape recorded conversations" and found "the tapes seem to have been made in furtherance of an underlying conspiracy.").