TRINA A. HIGGINS, United States Attorney (#7349)
CARL D. LESUEUR, Assistant United States Attorney (#16087)
LUISA GOUGH, Assistant United States Attorney (#17221)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:23-CR-00039-HCN |
| Plaintiff, | UNITED STATES' OPPOSITION TO MOTION IN LIMINE [ECF 81] |
| vs. | |
| ZACHARY BASSETT and MASON WARR, | District Judge Howard C. Nielson, Jr. |
| Defendants. | |

Defendants Zachary Bassett and Mason Warr (Defendants) filed an omnibus

Motion in Limine to exclude evidence relating to COVID Economic Injury Disaster

Loan (EIDL) applications, total COVID tax credits applied for, and witness

tampering.[1] This evidence all goes to *the* issues in this case: whether the Defendants had fraudulent intent and the illicit nature of their agreement. There will be little serious debate that the information submitted on their clients' tax forms was manufactured. The evidence at issue on this Motion all goes to their intent, the nature of their agreement, and their consciousness of guilt. This evidence is admissible as intrinsic evidence of the conspiracy and to address their anticipated arguments that a rogue intern—who has already admitted guilt—is solely responsible.

## **LEGAL FRAMEWORK**

Rule 404(b) excludes evidence of other crimes or acts when offered "to prove the character of a person in order to show that he acted in conformity therewith." Evidence of other crimes or acts may, however, be admissible for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). In fact, the list of proper purposes is innumerable; Rule 404(b) is designed to be "inclusive[,]

---

[1] Defendant Bassett's First Motion in Limine (Motion), *U.S. v. Bassett*, No. 2:23-cr-00039-HCN (D. Utah Aug. 21, 2024), ECF 81; Defendant Mason Warr's Motion to Join in Co-Defendant Zachary Bassett's First Motion in Limine, *U.S. v. Bassett*, No. 2:23-cr-00039-HCN (D. Utah Aug. 22, 2024), ECF 84.

admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." *See U.S. v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001) (internal citation omitted). If "other act evidence is relevant and tends to prove a material fact other than the defendant's criminal disposition, it is offered for a proper purpose under Rule 404(b) and may be excluded only under Rule 403."[2] *Id.*

## <u>ANALYSIS</u>

The disputed evidence—Defendants' EIDL application program, losses suffered by customers, and witness tampering—is properly admissible for noncharacter purposes, and its probative value exceeds any applicable Rule 403 dangers. Defendants will argue at trial that an intern, who has already entered a guilty plea, is solely responsible for the fraud in their applications for COVID tax credits, and they were not really involved. But the total volume of COVID tax credits they pursued demonstrates that this was their primary business strategy at the time, belying claims that they were uninvolved, unconcerned, or unaware of what was happening. Their efforts to get clients to act as strawmen to obtain

---

[2] Federal Rule of Evidence 403 allows exclusion of "relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

EIDL loan proceeds was part and parcel of the same marketing campaign as the COVID tax credits, belying any claim it is not probative of the scope of their conspiracy or their intent at the time. And their efforts to coach, entice, and threaten witnesses to deny Defendants' role demonstrates consciousness of guilt, regardless of whether or not it constitutes a separate offense. So, as discussed more fully below, each of these categories of evidence ought to be admitted as evidence intrinsic to the conspiracy and for the permissible purpose of demonstrating their illicit intent and agreement.

1. EIDL Applications

The government noticed its intent to admit evidence of Defendants' attempts to encourage clients to submit EIDL applications for monetary gain to show intent and lack of mistake.[3] Defendants assert this evidence of uncharged conduct is irrelevant to the charged fraud counts and is therefore inadmissible because it would confuse the jury and be prejudicial.[4] This argument fails.

---

[3] United States' Notice of Intent to Use Intrinsic Evidence of Conspiracy and 404(b) Evidence (U.S. Notice), *U.S. v. Bassett*, 2:23-cr-00039-HCN-JCB (D. Utah Aug. 12, 2024), ECF 74.
[4] Motion at 1–2.

While uncharged conduct is inadmissible as a general rule, the "well recognized exception to this rule" allows evidence of "uncharged crimes, wrongs, or alleged prejudicial acts . . . for the purpose of proving motive, opportunity, intent, knowledge, identity[,] or absence of mistake." *U.S. v. Parker*, 469 F.2d 884, 889 (10th Cir. 1972) (internal citation and quotations omitted). Some factors to consider when admitting uncharged conduct include whether the acts were remote in time, if the subject matter is related, the type of case, and the strength of the government's case. *Id.* at 893.

Here, all these factors weigh in favor of admitting the EIDL evidence. Evidence showing defendants encouraged clients to obtain federal COVID EIDL funds to obtain proceeds for Defendants' accounting business is highly related to the subject matter of the case at hand—whether defendants fraudulently obtained COVID-related tax credits for clients. *See id.* at 893 (finding evidence which is "so related to the crime charged" serves "to establish a motive . . . and an absence of mistake"). And not only is the evidence not remote in time, it is simultaneous and inextricably intertwined; the EIDL program was pushed in the

very same communications as the COVID-related IRS tax credit programs.[5]

Additionally, because this is a conspiracy case, "the government has

considerable leeway in offering evidence of other offenses." *See id.* at 894

(internal citation and quotation omitted). It shows the illicit nature of the

coconspirators' agreement and their criminal intent. Finally, the evidence in this

case is strong. Multiple employees and customers will testify that Defendants

submitted IRS COVID-related tax forms replete with false data, and that

Defendants trained employees not to ask for the true data. The evidence of the

uncharged conduct is highly relevant and has real probative value to show intent

and lack of mistake.

It follows that any chance the EIDL evidence would confuse the jury or

create prejudice fails to substantially outweigh the strong probative value this

evidence provides. Moreover, while Defendants assert the EIDL evidence

"would suggest a wholly separate 'scheme' introduced solely for attacking" their

character,[6] it is misleading to describe it as wholly separate. As mentioned

---

[5] Emails from defendants and their company advertise to clients the benefits of applying for EIDL funds along with the Employee Retention Tax Credit (ERC), which is the basis of some of the charged conduct. ELEC-COS-0009823 to 9828; ELEC-COS-0343784.

[6] Motion at 2.

before, the Defendants pushed the EIDL loans through the same business through the same communications to the same clients at the same time as they pushed their COVID tax credit scheme. Plus, the proposed evidence makes only limited mention of their EIDL program. Only one client fell for their EIDL program. The bulk of the trial evidence focuses on dozens of tax credit applications involved in the charged scheme and conspiracy—COVID-related tax credit fraud via ERC and sick and family leave credits—creating no confusion and leaving no doubt with the jury what evidence forms the basis for the charged conduct.

In sum, the EIDL evidence is admissible. It is offered for a proper purpose, to show intent and lack of mistake. It is highly probative to that end.  And any chance for confusion or prejudice fails to substantially outweigh its probative value.

2. Total COVID Tax Credit Application Amounts

The Indictment alleges Defendants, along with others, engaged in a tax fraud scheme wherein participants submitted more than one thousand IRS forms

"claiming in excess of $11,000,000" in COVID-related tax credits.[7] Defendants argue "any argument or testimony about the alleged loss amount" should be excluded because the sum alleged is factually inaccurate and has no probative value. Neither argument works to exclude the evidence.

First, the volume of tax credit applications submitted tends to show this was not some overlooked aspect of their business run by a rogue employee, but that it was the primary business strategy in which the Defendants were intimately involved and had every reason to be involved. Plus, general evidence of loss has probative value to demonstrate knowledge and intent to commit fraud, which is not outweighed by chance of misleading the jury or prejudice. "[C]ourts have held repeatedly that loss is relevant in fraud cases to demonstrate a defendant's knowledge or intent to commit fraud." *United States v. Munoz-Franco*, 487 F.3d 25, 62 (1st Cir. 2007) (citing *United States v. Heimann*, 705 F.2d 662, 669 (2d Cir. 1983)). Because "fraudulent intent is difficult to prove with direct evidence," circumstantial evidence may be necessary to create an inference of fraudulent intent. *U.S. v. Holloway*, 826 F.3d 1237, 1246 (10th Cir. 2016)

---

[7] Indictment ¶ 17.

(quoting *U.S. v. Kalu*, 791 F.3d 1194, 1205 (10th Cir. 2015)). One type of circumstantial evidence used to establish fraudulent intent is "proof of economic harm to victims of the fraud." *Id.*; *see also United States v. Welch*, 327 F.3d 1081, 1104–06 (10th Cir. 2003) (explaining that evidence of financial loss is important to establishing intent in mail or wire fraud prosecution), *abrogated on other grounds by U.S. v. McBride*, 94 F.4th 1036 (10th Cir. 2024). The charged conduct includes wire fraud, which requires showing "specific intent to defraud." *See* Tenth Circuit Pattern Jury Instruction no. 2.57. Thus, the total tax credits applied for has significant probative value to the case. Defendants' hypothetical choices about how they intend to challenge whether this total constitutes the amount of loss has no bearing on whether introducing the total tax credits applied for would confuse and prejudice the jury.[8] They articulate no real unfair prejudice or confusion that would ensue.

Second, whether or not the evidence establishes the total credits applied for constitute the total loss is a matter for the jury to consider and not a basis for exclusion at this stage. Defendants erroneously assert the government has not

---

[8] *See* Motion at 3 (arguing evidence of losses would force defense to put on forensic experts, leading to a longer trial and causing confusion and prejudice).

marked any exhibits to support the loss figure.[9] The exhibit list features scores of fraudulently submitted tax forms which resulted in payments for COVID-related tax credits to which employers were not entitled to receive. Any arguments about whether there was fraud on the forms and legitimate entitlement to the credits is an issue for the jury.[10] Challenges to the evidence can be made by filing a motion on the sufficiency of the evidence at trial. *See* Fed. R. Crim. P. 29 (allowing a defendant to move for acquittal based on insufficient evidence).

For these reasons, evidence of the total tax credits applied for is admissible. This evidence helps establish intent, a key element in fraud cases, and defendants failed to identify any dangers outweighing the probative value of this evidence. Questions surrounding the evidentiary basis and total amount of loss are for trial.

---

[9] Motion at 3.

[10] Motion at 2. Defendants assert only thirty forms had fraudulent signatures. *Id.* Even assuming that were true, the government alleges, and the evidence at trial will show, fraud occurred in a variety of ways: false representations about the number of employees, false representations about eligibility for ERC, false representations about payroll, and false representations about sick and family leave wages. Indictment, *U.S. v. Bassett*, 2:23-cr-00039-HCN (D. Utah Feb. 1, 2023), ECF 1.

3. <u>Witness Tampering</u>

Last, Defendants challenge the government's notice to introduce evidence showing (1) Defendants threatened employees critical of Defendants' business practices, (2) Defendants attempted to influence witnesses, and (3) Defendants bribed witnesses.[11] Defendants argue this evidence is excludable because there have been no charges filed for obstruction of justice or witness tampering, and it is improper to comment on Defendants' instructing clients and employees to exercise their right to remain silent. The government's proposed evidence is legally admissible and there is no basis for exclusion.

As an initial matter, courts agree that evidence showing a defendant took steps to threaten, influence, or bribe a potential witness is relevant and admissible under the Federal Rules of Evidence. *See, e.g.*, *U.S. v. Walker*, 104 F.3d 368, at *5 (10th Cir. 1996) (unpublished) (noting that evidence of witness tampering would likely be admissible at trial to show consciousness of guilt); *U.S. v. Balzano*, 916 F.2d 1273, 1281 (7th Cir. 1990) ("In a conspiracy case courts may consider evidence of attempts to influence a witness as relevant in showing a consciousness of guilt."

---

[11] Motion at 3–4.

(internal citations and quotations omitted)); *U.S. v. Mendez-Ortiz*, 810 F.2d 76, 78–79 (6th Cir. 1986) (explaining that Rule 404(b) allows admission of "evidence that defendant attempted to bribe and threaten[] a witness. . . to show consciousness of guilt"); *U.S. v. Hammond*, 781 F.2d 1536, 1540 (11th Cir. 1986) ("Courts may consider evidence of attempts to influence a witness as relevant in showing a consciousness of guilt."). Just because no obstruction or witness tampering charges have been filed does not mean the evidence is irrelevant. *Parker*, 469 F.2d at 889 (listing bases for admitting evidence of uncharged conduct, including knowledge and intent).

Concerns that the government intends to use the evidence for an improper purpose (commenting on an individual's Sixth Amendment right to remain silent) are unfounded. The government will not ask about the *Defendants'* silence. As noted, the government intends to ask about Defendants' attempts to influence other witnesses. In emails and recorded phone calls noticed by the government, Defendants threatened employees that were critical of business practices, Defendants coached a client on what to say to IRS agents when asked about data on filings, and Defendants promised an "amazing" financial future to an employee

if he would accept sole responsibility for the ERC program. This evidence is properly admissible under the caselaw.

For the foregoing reasons, Defendants' Motion in Limine [Dkt. 81] should be denied.

DATED this 24th day of August, 2024.

Respectfully submitted,

TRINA A. HIGGINS
United States Attorney

By: /s/ Luisa Gough
Carl D. LeSueur
Luisa Gough
Assistant United States Attorneys