TRINA A. HIGGINS, United States Attorney (#7349)
CARL D. LESUEUR, Assistant United States Attorney (#16087)
LUISA GOUGH, Assistant United States Attorney (#17221)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

---

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ZACHARY BASSETT and MASON WARR, <br><br> Defendants. | Case No. 2:23-CR-00039-HCN <br><br> Howard C. Nielson, Jr. <br> United States District Judge |

## __UNITED STATES' TRIAL BRIEF__

SUMMARY OF RELEVANT FACTS ................................................................................. 1

STIPULATIONS ............................................................................................................ 4

ANTICIPATED WITNESSES ......................................................................................... 5

    A.    Government and Law Enforcement ................................................................ 5

    B.    Employees ..................................................................................................... 6

    C.    Clients .......................................................................................................... 7

TRIAL EXHIBITS ......................................................................................................... 7

    A.    Tax Filings and Related Documents ............................................................. 8

    B.    Client Communications ................................................................................ 8

    C.    Employee Communications and Materials ................................................... 9

    D.    Undercover Recordings ................................................................................ 9

PENDING MOTIONS AND POTENTIAL ISSUES ......................................................... 9

    A.    Pending Motions .......................................................................................... 9

    B.    Potential Evidentiary Issues ...................................................................... 10

        1.    Evidence for Impact on the Defendants' State of Mind ........................ 10

        2.    Examination by Leading Questions ...................................................... 12

        3.    Rule of Completeness ........................................................................... 13

CONCLUSION ........................................................................................................... 18

Given the history and complexity of the case, the United States submits this trial brief to help anticipate evidentiary or legal issues that may arise at trial. This brief includes a summary of the relevant facts, stipulations, anticipated witnesses, anticipated exhibits, evidentiary rulings, potential evidentiary issues, and potential legal issues in this trial.

## SUMMARY OF RELEVANT FACTS

After the COVID-19 pandemic hit in 2020, Congress offered several COVID-related tax credits to support employers and individuals during the challenging time. The Employee Retention Credit (the "ERC")—designed to encourage business to keep employees on their payroll—was a refundable tax credit against certain employment taxes equal to 50% of qualified wages (and later increased to 70% of qualified wages). For the purposes of the ERC, an eligible employer was a business with operations that had been partially or fully suspended due to governmental COVID-19 orders, or a business which saw a 50% decline in gross receipts as compared to the same quarter in 2019. Certain employers could also be reimbursed for sick and family leave wages paid to

employees on COVID-19 related leave. Employers could obtain these COVID-19 related tax credits through filing a Form 7200 or Form 941.

In 2020, Defendants Zachary Bassett and Mason Warr, through their company COS Accounting, filed over one thousand Forms 7200 and 941 claiming entitlement to over $11,000,000 in COVID-19 related tax credits for clients. Many of these filings were fraudulent.

Defendants convinced people to hire their firm with claims that they had developed unique tax expertise concerning the COVID-19 tax credits and employed a highly qualified staff of accountants enabling them to seek credits no other firm in the country was seeking for its clients. They charged those who were convinced an exorbitant fee and filed forms on their behalf with little knowledge or understanding from the clients. It is anticipated at trial that they will deny they understood the credits or that they were even involved in their firm's program. The whole affair, they will argue, is to be blamed on a college student they had hired just a couple weeks before launching the scheme.

The forms their employees filed for their clients usually claimed the maximum allowable wages for employees, regardless of whether their clients

2

actually paid such wages, and regardless of whether those wages actually qualified for the credit due to a quarantine order or 50% loss in business revenues. Defendants and their employees would also list spouses as employees of companies to obtain additional wages, regardless of whether the spouse was an employee or receiving a wage. And Defendants and their employees would prepare forms claiming sick and family leave wages for their LLC clients, regardless of whether the LLC had any employees who were unable to work, whether the LLC actually paid them, or whether COVID-19 qualifying events occurred. Finally, without some clients' knowledge or approval, Defendants and their employees would sign and submit Forms 7200.

On October 20, 2020, IRS agents came to COS Accounting's offices with an administrative subpoena. The college intern quit in February 2021. In August 2021, the IRS executed a search warrant at COS Accounting offices.

The Defendants continued to direct their employees to file for the tax credits with the same false claims as before after the initial IRS visit in October 2020 and after the college intern quit in February 2021.

3

In February 2023, a federal grand jury charged Mr. Bassett, Mr. Warr, and COS Accounting with one violation of 18 U.S.C. § 371 (Conspiracy to Defraud the United States), thirteen violations of 18 U.S.C. § 1343 (Wire Fraud) connected to fraudulently filed Forms 7200, and eleven violations of 26 U.S.C. § 7206(2) (Aiding and Assisting in Filing False Tax Returns) related to fraudulent filings of Forms 941.[1] Trial is set to begin on Tuesday, September 10, 2024.

An alleged coconspirator, who Defendants hired as an intern just weeks before their employees began preparing the allegedly fraudulent forms, has entered a guilty plea and admitted that he helped the Defendants devise the fraudulent scheme. It is anticipated that the Defendants will argue that (i) they turned over the reins of their company to this newly hired intern, (ii) they did not know or understand what he was doing or that it was wrong, and (iii) they are therefore not responsible for the fraud; their intern holds sole responsibility.

## STIPULATIONS

The parties have reached one fact stipulation, which the United States anticipates marking and admitting as Exhibit 89. It is a stipulation that the Forms

---

[1] Indictment, *U.S. v. Bassett*, 2:23-cr-00039-HCN-JCB (D. Utah Feb. 1, 2023), ECF 1.

7200 that COS Accounting filed were submitted by interstate wire communications.

## ANTICIPATED WITNESSES

*A. Government and Law Enforcement*

The United States anticipates calling one IRS employee. This employee is familiar with the Employee Retention Credit and the credits for Sick Leave Wages and Family Medical Leave Wages that are at the heart of this prosecution. He will discuss their purpose and the meaning of relevant terms, as the IRS employees like himself understood them. He will discuss certain forms (7200 and 941) and instructions that were available to help taxpayers claim the credits. He will discuss what the IRS would have understood or expected, if provided certain information provided on Forms 7200 or 941. He is not being proffered as an expert, but rather to testify about matters he knows as a result of his work at the IRS. (The parties previously met and conferred about whether an expert designation or disclosure was necessary).

The United States anticipates calling two law enforcement witnesses, including two special agents (SA) with the United States Internal Revenue

Service. SA Jamie Hipwell investigated the scheme for over a year and visited COS Accounting on several occasions to speak with employees and execute a search warrant. He will testify to most aspects of the scheme and Defendants' involvement in the creation and execution of the fraud. SA David Lowe will testify of his undercover operation, including conversations with Defendants and an employee during the process of filing for COVID-19 tax credits through COS Accounting.

B. *Employees*

Defendants, through their company COS Accounting, hired many employees to solicit clients and file the fraudulent Forms 7200 and 941. These employees, young college students at the time, will testify about their responsibilities on the COS Accounting COVID-19 relief team, how the focus was on increasing "sales" by signing up clients for the highest amount of COVID-19 relief tax credits using fabricated numbers and false information, and that it was all done under the training and direction of Defendants. The United States anticipates calling four of these employees as witnesses.

Of note, the Court has granted the parties' stipulated Motion to permit the appearance of one witness—former employee Tyler Haws—via videoconference.[2] Mr. Haws lives on the East Coast and is expecting his first baby the first week of trial. The parties have discussed the logistics and anticipate doing a dry run Tuesday after trial closes.

## C.  Clients

This case involves many clients whose tax filings contained false and fraudulent representations. The United States limited its charged conduct to filings of nine clients, all of whom will testify at trial. The clients will establish the falsity of the information included on their filings, and the fraudulent representations made to induce them to trust COS Accounting.

## TRIAL EXHIBITS

The United States will seek to introduce documents, videos, and audio recordings to establish its case.

---

[2] Stipulation and Motion to Permit Testimony by Videoconference, *U.S. v. Bassett,* 2:23-cr-00039-HCN-JCB (D. Utah Aug. 29, 2024), ECF 90.

A. *Tax Filings and Related Documents*

The United States will introduce Forms 7200 and 941 for the charged

counts, as well as dozens of other tax forms for the clients connected to the

charged conduct. Tax filings for COS Accounting employees and Defendants will

also be introduced. And the United States will seek to introduce stacks of Form

7200s seized by law enforcement during the execution of a search warrant.

Finally, the United States will introduce several informative IRS documents that

were publicly available at the time, which explain the relevant COVID-relief

programs and how to fill out the forms. The parties are conferring regarding the

authenticity of these documents. The United States does not anticipate any issues

with the admissibility of these documents.

B. *Client Communications*

The next category of evidence concerns communications—emails, texts,

and recorded audio calls—between COS Accounting employees, Defendants,

and clients. The United States will seek to introduce numerous communications

in this category and does not at this time anticipate issues with admissibility.

C. *Employee Communications and Materials*

The United States will also introduce emails and texts between COS Accounting employees, including Defendants, and COS Accounting training notes. To date, there have been no objections lodged to this evidence.

D. *Undercover Recordings*

There are two categories of undercover recordings the United States will introduce: 1) video and audio recordings made by SA Lowe during his investigation, and 2) video and audio recordings made by COS Accounting employees testifying at trial. The parties continue to confer regarding the clips to ensure there are no objections on the grounds of completeness, however these clips are still being adjusted.

## PENDING MOTIONS AND POTENTIAL ISSUES

The United Sates will outline the status on pending motions, as well as provide legal authority on potential trial issues.

A. *Pending Motions*

The United States believes the following issues raised in motions or objections remain outstanding:

- Joint Proposed Jury Instructions and Verdict Form (ECF 68)
  - o <u>Defendant Mason Warr</u> objected to Jury Instruction No. 22 (Deliberate Ignorance) (ECF 68, 72). The Court reserved ruling. But the Court indicated that if the trial evidence comes in as anticipated—i.e. if the evidence establishes the Defendants relied entirely upon an untrained intern to run the COVID-relief tax credit program and deny knowing that anything he did was wrong—a wilful blindness instruction is likely appropriate.
- <u>United States:</u> Motion in Limine to Exclude Kohler Testimony, Article, & Videos (ECF 71, 76, 78, 82, 89). The Court reserved ruling, but indicated that this evidence is unlikely to come in unless there is direct evidence that Warr or Bassett reviewed or relied on the article & videos.
- <u>United States:</u> Motion in Limine to Exclude Exhibits 1040 & 1042 (ECF 80). The Court preliminarily excluded these exhibits on hearsay grounds, subject to the United States opening the door on completeness grounds.
- <u>Defendants:</u> Motion in Limine. The Court denied this motion except to reserve ruling on the EIDL program, with a preliminary finding that it would likely be kept out except to the extent that the evidentiary items overlapped with the ERC program.

B.  *Potential Evidentiary Issues*

    1.  <u>Evidence for Impact on the Defendants' State of Mind</u>

At the final pretrial conference, Defendant Warr represented that Warr would likely testify that he reviewed an article by Mark Kohler. Defendant Bassett represented that he would likely testify that he reviewed the article as well as certain videos produced by Mark Kohler. The United States conceded

that, if they so testified, that evidence may be admissible for its impact on their state of mind.

The United States has likewise listed on its Exhibit List a number of exhibits that contain statements by clients relaying to the Defedants' their own opinions or their accountant's opinions that they did not in fact qualify for the COVID tax credits, the Defendants' COVID relief promises and practices sounded "too good to be true" or like a scam, or the practices violated the law or the spirit of the law. The Defendants have indicated their intent to object to one of these exhibits, Government's Exhibit 147.

The United States respectfully submits it may be appropriate to craft and provide the jury a limiting instruction concerning evidence of opinions offered by clients, customers, or other accountants. That is, although the jury may hear evidence that one Defendant or the other was exposed to other people's opinions about certain COVID relief practices, those opinions are admitted for the limited purpose of any affect they may have had on each Defendant's knowledge and intent. Those opinions should not be considered for any other purpose.

2.  Examination by Leading Questions

With Defendants' former employees, there may arise a question at trial whether the United States should be allowed to proceed by leading questions. Federal Rule of Evidence 611(c)(2) allows for examination by leading questions not only for adverse parties and hostile witnesses, but also for witnesses "identified with an adverse party." If a witness is "identified with an adverse party," the usual concerns of a witness inaccurately accepting the suggestion of leading questions are not present. The examining attorney is not required to first show that the witness is actually hostile. *See Ellis v. City of Chicago*, 667 F. 2d 606, 612-13 (7th Cir. 1981) (adoption of Rule 611(c) means that showing of actual hostility or a determination that the witness was an officer, director, or agent of an adverse party is no longer required if they are sufficiently "identified with an adverse party"); *Stahl v. Sun Microsystems*, 775 F. Supp. 1397, 1398 (D. Colo. 1991) (leading questions permitted to plaintiff's counsel who called witness who was former employer of defendant and has ongoing relationship with a key witness for defendant). Such a witness is unlikely to simply accept the suggestion of a leading question, due to their identity with the adverse party. Their motivation

to protect the adverse party mitigates the ordinary concerns of leading questions posed to friendly witnesses. Relationships qualifying as adverse party identity include officers, directors, agents, or employees of an adverse party, as well as former employees, romantic partners, and (when called by the defense) law enforcement investigators. *See, e.g., Securities and Exchange Commission v. Goldstone*, 317 F.R.D. 147, 164 (D.N.M. 2016); *Walker v. Target Corporation*, 2017 WL 2987282, *5 (S.D. Miss. July 12, 2017) (allowing use of leading questions to examine witnesses who were defendant's employees at time of the relevant events); *Stahl*, 775 F. Supp. at 1398 (plaintiff's counsel permitted to examine by leading questions witness who was former employer of defendant and has ongoing relationship with a key witness for defendant).

### 3. Rule of Completeness

Because the United States seeks to submit as evidence several clips of audio/video recordings, this may raise questions concerning the rule of completeness. The clips were identified prior to trial, and there have been some adjustments made based upon completeness requests by the defendants. There are no known pending disagreements.

The Defendants noticed clips of certain videos by Mark Kohler. The United States sought to exclude them entirely. Given the Court's preliminary ruling, the

The rule of completeness, as partially codified in Federal Rule of Evidence 106, requires introducing the portions of recordings "that are relevant to an issue in the case and necessary to explain or clarify the already-admitted portions." *United States v. Williston*, 862 F.3d 1023, 1038 (10th Cir. 2017) (internal citation omitted). In other words, "completeness" for purposes of Rule 106 is intended to avoid introducing a misleadingly incomplete statement. *See id.* It does not invite introduction of every other statement in the same recording. The rule of completeness applies only where the admitted portion, "if divorced from the context of the other statement, is different than the meaning the statement has when read within the context provided by the other statement." *United States v. Castro-Cabrera*, 534 F. Supp. 2d 1156, 1160 (C.D. Cal. 2008).

4. <u>Hearsay Party Opponent Exception</u>

The United States will offer into evidence certain communications which may reflect out-of-court statements by Defendants and COS Accounting's employees and others with whom they communicated. These statements – which

may include coconspirators' statements – are not being offered to prove the truth

of any assertions in the communications. Rather, they are being submitted to

prove the statements were made, for purpose of providing context and the effect

of those statements on the recipients. This may include statements coaching

witnesses, or enticing or threatening witnesses. These kinds of statements qualify

as admissible non-hearsay because Defendants' own statements within these

communications are introduced by the United States as statements by a party

opponent, admissible under Rule 801(d)(2)(A) of the Federal Rules of Evidence.

*Anderson v. United States*, 417 U.S. 211, 219 (1974); *United States v. Smalls*, 605 F.3d

765, 785 (10th Cir. 2010); *United States v. Krohn*, 573 F.2d 1382, 1386 (10th Cir.

1978).

On the other hand, should Defendants seek to introduce these out-of-court

statements as substantive evidence—this qualifies as inadmissible hearsay. *See*

Fed. R. Evid. 801, 802. It does not matter whether this is through oral testimony

or documentary evidence of Defendants' statements.

### 5. <u>Testimony Concerning Defendants' Character</u>

If defense elicits testimony about Defendants' reputation or character, the Federal Rules of Evidence permit the government to inquire into specific instances of misconduct. *See id.* R. 608.

### 6. <u>Proper Use of Law Enforcement Reports</u>

Many COS Accounting employees were interviewed by IRS agents and the interviews were later memorialized into "302 reports" which have been disclosed. There is often confusion about how these may be used in cross-examination. These 302 reports themselves are not in evidence-they are an officer's hearsay statements describing his memory of a witness's hearsay statements-and therefore should not be referred to or introduced in cross-examination. Any statements IRS agents wrote in the reports are not the witnesses' statements; they are the agents'. Thus, the statements within the reports do not qualify as prior inconsistent statements under Federal Rule of Evidence 613(b) if the witnesses testify inconsistently with the agents' reports. On cross-examination, an attorney may rely on the information in a 302 report to ask whether an interview occurred on a certain date and whether the witness

made a certain statement on that date, but may not refer to the 302 report itself.

Similarly, the examining attorney may use the report to refresh the witness's

memory (without describing the document to the jury).

The District of Colorado recently summarized how such reports may be

used:

> Generally, counsel may ask the witness whether he or she
> previously made the statement to the FBI agent that is documented
> in the Form 302 memo. Counsel may also show the Form 302 memo
> to the witness for purposes of refreshing recollection. If the witness
> denies having made the statement, the defense may call the FBI
> agent and ask whether the witness made the prior statement. If the
> FBI agent denies it, the Form 302 memo may be used for purposes of
> impeachment of the FBI agent pursuant to Rule 613(b), not as
> substantive evidence.,

*United States v. DaVita Inc.*, No. 1:21-CR-00229-RBJ, 2022 W 833368, at *4 (D. Colo.

Mar. 21, 2022). Moreover, a report's silence concerning certain topics of

subsequent testimony is generally not considered inconsistent with that

testimony for impeachment purposes. *See United States v. Leonardi*, 623 F.2d 746,

757 (2d Cir. 1980). Testimony that simply augments prior statements with

additional details is not inconsistent. *Id.*

## CONCLUSION

The United States will be prepared to answer any further questions throughout the trial.

DATED this 8th day of September, 2024.

Respectfully submitted,

TRINA A. HIGGINS
United States Attorney

By: */s/ Carl D. LeSueur*
Carl D. LeSueur
Luisa Gough
Assistant United States Attorneys

18